UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

WILLIAM REILLY,

        Plaintiff,                                  Hon. Robert Holmes Bell

v.                                                   Case No. 1:13-CV-1096

COMMISSIONER OF SOCIAL
SECURITY,

        Defendant.
_____/

## REPORT AND RECOMMENDATION

This is an action pursuant to Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), to review a final decision of the Commissioner of Social Security denying Plaintiff's claim for Disability Insurance Benefits under Title II of the Social Security Act. Section 405(g) limits the Court to a review of the administrative record, and provides that if the Commissioner's decision is supported by substantial evidence, it shall be conclusive. Pursuant to 28 U.S.C. § 636(b)(1)(B), authorizing United States Magistrate Judges to submit proposed findings of fact and recommendations for disposition of social security appeals, the undersigned recommends that the Commissioner's decision be **affirmed**.

## STANDARD OF REVIEW

The Court's jurisdiction is confined to a review of the Commissioner's decision and of the record made in the administrative hearing process. *See Willbanks v. Sec'y of Health and Human Services*, 847 F.2d 301, 303 (6th Cir. 1988). The scope of judicial review in a social security

case is limited to determining whether the Commissioner applied the proper legal standards in making her decision and whether there exists in the record substantial evidence supporting that decision. *See Brainard v. Sec'y of Health and Human Services*, 889 F.2d 679, 681 (6th Cir. 1989).

The Court may not conduct a de novo review of the case, resolve evidentiary conflicts, or decide questions of credibility. *See Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). It is the Commissioner who is charged with finding the facts relevant to an application for disability benefits, and her findings are conclusive provided they are supported by substantial evidence. *See* 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla, but less than a preponderance. *See Cohen v. Sec'y of Dep't of Health and Human Services*, 964 F.2d 524, 528 (6th Cir. 1992) (citations omitted). It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Bogle v. Sullivan*, 998 F.2d 342, 347 (6th Cir. 1993). In determining the substantiality of the evidence, the Court must consider the evidence on the record as a whole and take into account whatever in the record fairly detracts from its weight. *See Richardson v. Sec'y of Health and Human Services*, 735 F.2d 962, 963 (6th Cir. 1984).

As has been widely recognized, the substantial evidence standard presupposes the existence of a zone within which the decision maker can properly rule either way, without judicial interference. *See Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (citation omitted). This standard affords to the administrative decision maker considerable latitude, and indicates that a decision supported by substantial evidence will not be reversed simply because the evidence would have supported a contrary decision. *See Bogle*, 998 F.2d at 347; *Mullen*, 800 F.2d at 545.

**PROCEDURAL POSTURE**

Plaintiff was 42 years of age on his alleged disability onset date. (Tr. 121). He successfully completed high school and previously worked as an industrial maintenance mechanic and tool maker. (Tr. 32). Plaintiff applied for benefits on January 13, 2011, alleging that he had been disabled since November 7, 2009, due to bi-polar disorder and injuries to his ankles, knees, neck, and lower back. (Tr. 121-22, 149). Plaintiff's application was denied, after which time he requested a hearing before an Administrative Law Judge (ALJ). (Tr. 64-120). On May 4, 2012, Plaintiff appeared before ALJ Laurel Greene with testimony being offered by Plaintiff and a vocational expert. (Tr. 39-63). In a written decision dated May 10, 2012, the ALJ determined that Plaintiff was not disabled. (Tr. 21-34). The Appeals Council declined to review the ALJ's determination, rendering it the Commissioner's final decision in the matter. (Tr. 1-5). Plaintiff subsequently initiated this pursuant to 42 U.S.C. § 405(g), seeking judicial review of the ALJ's decision.

**ANALYSIS OF THE ALJ'S DECISION**

The social security regulations articulate a five-step sequential process for evaluating disability. *See* 20 C.F.R. §§ 404.1520(a-f), 416.920(a-f).[1]  If the Commissioner can make a

---

[1] 1. An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings (20 C.F.R. 404.1520(b));

2. An individual who does not have a "severe impairment" will not be found "disabled" (20 C.F.R. 404.1520(c));

3. If an individual is not working and is suffering from a severe impairment which meets the duration requirement and which "meets or equals" a listed impairment in Appendix 1 of Subpart P of Regulations No. 4, a finding of "disabled" will be made without consideration of vocational factors (20 C.F.R. 404.1520(d));

4. If an individual is capable of performing work he or she has done in the past, a finding of "not disabled" must be made (20 C.F.R. 404.1520(e));

dispositive finding at any point in the review, no further finding is required. *See* 20 C.F.R. §§ 404.1520(a), 416.920(a). The regulations also provide that if a claimant suffers from a nonexertional impairment as well as an exertional impairment, both are considered in determining his residual functional capacity. *See* 20 C.F.R. §§ 404.1545, 416.945.

The burden of establishing the right to benefits rests squarely on Plaintiff's shoulders, and he can satisfy his burden by demonstrating that his impairments are so severe that he is unable to perform his previous work, and cannot, considering his age, education, and work experience, perform any other substantial gainful employment existing in significant numbers in the national economy. *See* 42 U.S.C. § 423(d)(2)(A); *Cohen*, 964 F.2d at 528. While the burden of proof shifts to the Commissioner at step five of the sequential evaluation process, Plaintiff bears the burden of proof through step four of the procedure, the point at which his residual functioning capacity (RFC) is determined. *See Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997) (ALJ determines RFC at step four, at which point claimant bears the burden of proof).

The ALJ determined that Plaintiff suffers from: (1) residuals from right knee arthroscopy; (2) degenerative disc disease; (3) obesity; and (4) depression, severe impairments that whether considered alone or in combination with other impairments, failed to satisfy the requirements of any impairment identified in the Listing of Impairments detailed in 20 C.F.R., Part 404, Subpart P, Appendix 1. (Tr. 23-27). The ALJ next determined that Plaintiff retained the capacity to perform work subject to the following limitations: (1) he can lift/carry 20 pounds

---

5. If an individual's impairment is so severe as to preclude the performance of past work, other factors including age, education, past work experience, and residual functional capacity must be considered to determine if other work can be performed (20 C.F.R. 404.1520(f)).

occasionally and 10 pounds frequently; (2) during an 8-hour workday, he can stand/walk for 4 hours and sit for 6 hours; (3) he can occasionally climb ladders, ropes, and scaffolds, ramps, and stairs; (4) he can occasionally balance, stoop, crouch, kneel, and crawl; (5) he can occasionally interact with supervisors and co-workers, but can never have contact with the general public. (Tr. 27).

The ALJ found that Plaintiff cannot perform his past relevant work at which point the burden of proof shifted to the Commissioner to establish by substantial evidence that a significant number of jobs exist in the national economy which Plaintiff could perform, his limitations notwithstanding. *See Richardson*, 735 F.2d at 964. While the ALJ is not required to question a vocational expert on this issue, "a finding supported by substantial evidence that a claimant has the vocational qualifications to perform specific jobs" is needed to meet the burden. *O'Banner v. Sec'y of Health and Human Services*, 587 F.2d 321, 323 (6th Cir. 1978) (emphasis added). This standard requires more than mere intuition or conjecture by the ALJ that the claimant can perform specific jobs in the national economy. *See Richardson*, 735 F.2d at 964. Accordingly, ALJs routinely question vocational experts in an attempt to determine whether there exist a significant number of jobs which a particular claimant can perform, his limitations notwithstanding. Such was the case here, as the ALJ questioned a vocational expert at the administrative hearing.

The vocational expert testified that there existed approximately 54,000 jobs in the state of Michigan, and more than 800,000 jobs nationally, which an individual with Plaintiff's RFC could perform, such limitations notwithstanding. (Tr. 59-61). This represents a significant number of jobs. *See Born v. Sec'y of Health and Human Services*, 923 F.2d 1168, 1174 (6th Cir. 1990); *Hall v. Bowen*, 837 F.2d 272, 274 (6th Cir. 1988); *Martin v. Commissioner of Social Security*, 170 Fed.

Appx. 369, 374 (6th Cir., Mar. 1, 2006). The ALJ concluded, therefore, that Plaintiff was not entitled to disability benefits.

I.	**The ALJ Properly Discounted Plaintiff's Subjective Allegations**

At the administrative hearing, Plaintiff testified that he was unable to return to work. (Tr. 48, 56-57). Plaintiff testified that he experiences pain, numbness, and tingling in his lower extremities. (Tr. 49-50). Plaintiff reported that his medications "take the edge off, [but that] they're not a cure all." (Tr. 50). Plaintiff testified that when he takes his medications his pain rates "around six" on a scale of 1-10. (Tr. 51). Plaintiff reported that he experiences 2-3 migraine headaches daily each of which lasts "from an hour to four hours." (Tr. 53). Plaintiff testified that he has nightmares and experiences difficulty handling stress and remembering things. (Tr. 55-56). The ALJ found Plaintiff's allegations to be "not fully credible." (Tr. 31). Plaintiff argues that he is entitled to relief because the ALJ improperly discounted his subjective allegations.

As the Sixth Circuit has long recognized, "pain alone, if the result of a medical impairment, *may* be severe enough to constitute disability." *King v. Heckler*, 742 F.2d 968, 974 (6th Cir. 1984) (emphasis added); *see also*, *Grecol v. Halter*, 46 Fed. Appx. 773, 775 (6th Cir., Aug. 29, 2002) (same). As the relevant Social Security regulations make clear, however, a claimant's "statements about [his] pain or other symptoms will not alone establish that [he is] disabled." 20 C.F.R. § 404.1529(a); *see also*, *Walters v. Commissioner of Social Security*, 127 F.3d 525, 531 (6th Cir. 1997) (quoting 20 C.F.R. § 404.1529(a)) *Hash v. Commissioner of Social Security*, 309 Fed. Appx. 981, 989 (6th Cir., Feb. 10, 2009). Instead, as the Sixth Circuit has established, a claimant's assertions of disabling pain and limitation are evaluated pursuant to the following standard:

6

> First, we examine whether there is objective medical evidence of an underlying medical condition. If there is, we then examine: (1) whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain.

*Walters*, 127 F.3d at 531 (citations omitted). This standard is often referred to as the *Duncan* standard. *See Workman v. Commissioner of Social Security*, 105 Fed. Appx. 794, 801 (6th Cir., July 29, 2004).

Accordingly, as the Sixth Circuit has repeatedly held, "subjective complaints may support a finding of disability only where objective medical evidence confirms the severity of the alleged symptoms." *Id.* (citing *Blankenship v. Bowen*, 874 F.2d 1116, 1123 (6th Cir. 1989)). However, where the objective medical evidence fails to confirm the severity of a claimant's subjective allegations, the ALJ "has the power and discretion to weigh all of the evidence and to resolve the significant conflicts in the administrative record." *Workman*, 105 Fed. Appx. at 801 (citing *Walters*, 127 F.3d at 531).

In this respect, it is recognized that the ALJ's credibility assessment "must be accorded great weight and deference." *Workman*, 105 Fed. Appx. at 801 (citing *Walters*, 127 F.3d at 531); *see also*, *Heston v. Commissioner of Social Security*, 245 F.3d 528, 536 (6th Cir. 2001) ("[i]t is for the [Commissioner] and his examiner, as the fact-finders, to pass upon the credibility of the witnesses and weigh and evaluate their testimony"). It is not for this Court to reevaluate such evidence anew, and so long as the ALJ's determination is supported by substantial evidence, it must stand. The ALJ found Plaintiff's subjective allegations to not be fully credible, a finding that should not be lightly disregarded. *See Varley v. Sec'y of Health and Human Services*, 820 F.2d 777, 780

(6th Cir. 1987). In fact, as the Sixth Circuit recently stated, "[w]e have held that an administrative law judge's credibility findings are virtually unchallengeable." *Ritchie v. Commissioner of Social Security*, 540 Fed. Appx. 508, 511 (6th Cir., Oct. 4, 2013) (citation omitted).

In support of his position, Plaintiff advances two arguments. First, Plaintiff asserts that the ALJ's decision is based upon "meaningless boilerplate." Second, Plaintiff argues that the ALJ improperly relied upon his receipt of unemployment benefits in discounting his credibility.

The Court disagrees that the ALJ's credibility assessment is based upon meaningless boilerplate. While the Court does not dispute that the ALJ employed certain language which can fairly be characterized as "boilerplate," the use of such is not by itself grounds for relief. Practical realities necessitate that boilerplate of some kind is often employed by the ALJ, the Court, as well as litigants. A review of the ALJ's decision reveals that in addition to the challenged "boilerplate" conclusion, the ALJ discussed at length the evidence of record and detailed how such contradicted Plaintiff's allegations. (Tr. 23-32).

With respect to Plaintiff's physical impairments, the evidence reveals the following. Plaintiff underwent arthroscopic knee surgery on September 29, 2010. (Tr. 232-33). Treatment notes dated December 9, 2010, indicate that Plaintiff had made "great improvements" following knee surgery. (Tr. 240). X-rays of Plaintiff's lumbar spine, taken February 14, 2011, revealed "no instability." (Tr. 299). On February 23, 2011, Plaintiff participated in a CT scan of his brain the results of which were "negative." (Tr. 308). A March 25, 2011 examination revealed that Plaintiff was "neurologically intact." (Tr. 354). Following a May 19, 2011 examination, Dr. Mark Krinock reported that Plaintiff was experiencing "no loss of function." (Tr. 455).

The results of a June 13, 2011 bone scan examination revealed "no significant abnormal uptake." (Tr. 373). An EMG examination, conducted the same day, revealed "mild" polyneropathy of the lower extremities, but "no signs of lumbosacral radiculopathy or lumbosacral plexopathy." (Tr. 471). The following day, Plaintiff purchased a new motorcycle. (Tr. 416).

Treatment notes dated October 13, 2011, indicate that Plaintiff ambulated with a "fairly normal" gait. (Tr. 389). On November 11, 2011, Dr. Krinock reported that Plaintiff was experiencing "no compression of neurologic structure." (Tr. 436). The doctor informed Plaintiff that his "treatment of choice" was for Plaintiff to lose weight and stop smoking. (Tr. 438, 443). The doctor was confident that if Plaintiff accomplished these two goals his back pain would improve. (Tr. 438, 443, 455).

As for Plaintiff's emotional impairments, the evidence reveals the following. On December 23, 2010, Plaintiff was discharged from counseling at which time his GAF score was rated as 71.[2] (Tr. 223). Following a March 15, 2011 consultive examination, Anne Kantor, Limited Licensed Psychologist, concluded that "[Plaintiff] did not report nor did I observe signs and symptoms that lead to the diagnosis Bipolar Disorder." (Tr. 322). Kantor further concluded that Plaintiff "is capable of understanding, remembering and carrying out instructions and making decisions regarding work-related matters." (Tr. 322).

Treatment notes dated July 19, 2011, indicate that Plaintiff is making "good progress" and is "happier." (Tr. 420). Treatment notes dated August 15, 2011, reiterated that Plaintiff was

---

[2] The Global Assessment of Functioning (GAF) score refers to the clinician's judgment of the individual's overall level of functioning. American Psychiatric Association, *Diagnostic and Statistical Manual of Mental Disorders* 30 (4th ed. 1994) (hereinafter DSM-IV). A score of 71 indicates that "[i]f symptoms are present, they are transient and expectable reactions to psychosocial stressors; no more than slight impairment in social, occupational, or school functioning." *Id.* at 34.

"happier." (Tr. 422). On October 4, 2011, it was reported that Plaintiff experienced anger and agitation after he stopped taking his prescribed medication. (Tr. 426). Plaintiff resumed his medication and on October 18, 2011, it was reported that Plaintiff was "back on track emotionally and his mood is more balanced." (Tr. 428). Treatment notes dated February 8, 2012, indicate that Plaintiff's mood was "remarkably good" on his current medication regimen. (Tr. 468).

The ALJ noted that Plaintiff's activities were not consistent with his allegations of complete inability to work. Plaintiff reported that he helps two of his kids get ready for the school in the morning and then spends the rest of the day caring for his two non-school age children. (Tr. 46-47). Plaintiff reported that he attended his children's school functions and teacher conferences. (Tr. 48). Plaintiff reported that he plays the guitar, mows the lawn and is able to drive. (Tr. 46-47, 55). Also, Plaintiff reported that he did not stop working due to his impairments or limitations, but because he was laid off from his job. (Tr. 44, 149). In sum, there exists substantial evidence to support the ALJ's credibility assessment.

Plaintiff next argues that he is entitled to relief because the ALJ improperly found that he "committed perjury." At the administrative hearing, Plaintiff admitted that he received unemployment benefits after being laid off from his job. (Tr. 44). With respect to this circumstance, the ALJ stated as follows:

> After being laid off, the claimant collected unemployment benefits. The claimant reported to the Social Security Administration that he was unable to work. But, by collecting the benefits, the claimant affirmed having looked for work each week, and that if work was found, he would be ready, willing and able to accept it. Basically, the claimant's unemployment claim is tantamount to saying "I am able to work" while his disability claim is stating "I am not able to work." Both statements were made under the penalty of perjury. These

>conflicting statements were considered when I assessed the claimant's credibility.

(Tr. 31).

Contrary to Plaintiff's assertion, the ALJ did not conclude that Plaintiff committed perjury. Instead, the ALJ noted the apparent conflict between two sworn statements Plaintiff made. While this distinction may be subtle, it is nevertheless significant. The ALJ is expressly tasked with evaluating the evidence and resolving conflicts therein. That is precisely what the ALJ did. Moreover, this was simply one factor that the ALJ considered in assessing Plaintiff's credibility. While the Court recognizes from a practical standpoint why a claimant would simultaneously seek to recover benefits from two distinct programs, the fact remains that courts have made clear that receipt of unemployment benefits is inconsistent with a claim of disability and, moreover, constitutes a valid rationale for rejecting a claimant's subjective allegations. *See, e.g., Bastian v. Commissioner of Social Security*, 2014 WL 5073606 at *9 (W.D. Mich., Oct. 3, 2014) (collecting cases).

In sum, the ALJ properly assessed Plaintiff's credibility and her determination in this regard is supported by substantial evidence. Accordingly, this argument is rejected.

## II. The ALJ Properly Evaluated Plaintiff's Impairments

Plaintiff next asserts that he is entitled to relief because the ALJ failed to find that his headaches and diagnosis of meralgia paresthetica[3] constituted severe impairments. At step two of

---

[3] Meralgia paresthetica refers to a condition "characterized by tingling, numbness and burning pain in the outer part of [the] thigh." *See* Meralgia Paresthetica, available at
http://www.mayoclinic.org/diseases-conditions/meralgia-paresthetica/basics/definition/con-20030852 (last visited on February 11, 2015). This condition is commonly caused by "[t]ight clothing, obesity or weight gain" that results in "compression of the nerve that supplies sensation to the skin surface of [the] thigh." Meralgia paresthetica can, "in most cases," be relieved "with conservative measures." *Id.*

the sequential disability analysis articulated above, the ALJ must determine whether the claimant suffers from a severe impairment. The Sixth Circuit has held that where the ALJ finds the presence of a severe impairment at step two and proceeds to continue through the remaining steps of the analysis, the alleged failure to identify as severe some other impairment constitutes harmless error so long as the ALJ considered the entire medical record in rendering his decision. *See Maziarz v. Sec'y of Health and Human Services*, 837 F.2d 240, 244 (6th Cir. 1987); *Kirkland v. Commissioner of Social Security*, 528 Fed. Appx. 425, 427 (6th Cir., May 22, 2013) ("so long as the ALJ considers all the individual's impairments, the failure to find additional severe impairments. . .does not constitute reversible error").

The ALJ expressly stated that, "all impairments, both severe and non-severe, were considered" in resolving Plaintiff's claim for benefits. (Tr. 24). This assertion that is supported by a review of the ALJ's decision. Moreover, there is no evidence that the impairments in question impose on Plaintiff limitations greater than those recognized by the ALJ in her RFC determination. Accordingly, this argument is rejected.

**III.        The ALJ Properly Assessed the Medical Evidence**

Plaintiff next faults the ALJ for not "following the obvious import of the opinions of Drs. Krinock and Mahmood" and instead affording "great weight to the opinion of Dr. Larry Jackson." The Court is not persuaded.

In *Gayheart v. Commissioner of Social Security*, 710 F.3d 365 (6th Cir. 2013), the Sixth Circuit reiterated that the scrutiny to which a medical opinion is subjected depends on its source. *Id.* at 375-76. An ALJ must give controlling weight to the opinion of a treating source if:

(1) the opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and (2) the opinion "is not inconsistent with the other substantial evidence in the case record." *Id.* As the *Gayheart* court concluded, however, the "conflicting substantial evidence" sufficient to afford less than controlling weight to the opinion of a treating physician:

> must consist of more than the medical opinions of the nontreating and nonexamining doctors. Otherwise the treating-physician rule would have no practical force because the treating source's opinion would have controlling weight only when the other sources agreed with that opinion. Such a rule would turn on its head the regulation's presumption of giving greater weight to treating sources because the weight of such sources would hinge on their consistency with nontreating, nonexamining sources.

*Id.* at 377.

The ALJ in this case afforded "great weight" to the opinion of Dr. Larry Jackson, a doctor who reviewed the record and concluded that Plaintiff was not limited to an extent greater than that recognized by the ALJ. (Tr. 64-74). Relying on the aforementioned principle articulated by the *Gayheart* court, Plaintiff argues that the ALJ improperly assessed the "opinions" expressed by Dr. Krinock and Dr. Mahmood. Plaintiff's argument is misplaced.

*Gayheart* stands for the proposition that to discount the opinion of a treating physician, the ALJ must identify something more than conflicting evidence from a non-treating or non-examining source. While Dr. Krinock and Dr. Mahmood both appear to be properly characterized as treating physicians, Plaintiff has failed to identify any opinion expressed by either doctor which is inconsistent with the ALJ's RFC determination. Thus, Plaintiff's reliance on *Gayheart* is misplaced. Moreover, as the evidence detailed above makes clear, the ALJ's decision to place great weight on Dr. Jackson's opinion is supported by substantial evidence.

**IV.        The ALJ Properly Relied on the Testimony of a Vocational Expert**

Finally, Plaintiff argues that the ALJ's finding at Step V of the sequential evaluation process is flawed because such was premised upon the response by the vocational expert to an inaccurate hypothetical question. While the ALJ may satisfy her burden through the use of hypothetical questions posed to a vocational expert, such questions must accurately portray Plaintiff's physical and mental impairments. *See Cline v. Comm'r of Soc. Sec.*, 96 F.3d 146, 150 (6th Cir. 1996). The hypothetical question which the ALJ posed to the vocational expert simply asked whether there existed jobs which an individual could perform consistent with Plaintiff's RFC, to which the vocational expert indicated that there existed a significant number of such jobs both nationally and in the state of Michigan. The ALJ's RFC determination is supported by substantial evidence and there was nothing improper or incomplete about the hypothetical questions the ALJ posed to the vocational expert. The Court concludes, therefore, that the ALJ properly relied upon the vocational expert's testimony.

**CONCLUSION**

For the reasons articulated herein, the undersigned concludes that the ALJ's decision adheres to the proper legal standards and is supported by substantial evidence. Accordingly, it is recommended that the Commissioner's decision be **affirmed**.

OBJECTIONS to this report and recommendation must be filed with the Clerk of Court within fourteen (14) days of the date of service of this notice. 28 U.S.C. § 636(b)(1)(C). Failure to file objections within such time waives the right to appeal the District Court's order. *See*

*Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

                                                 Respectfully submitted,

Date: February 19, 2015                       /s/ Ellen S. Carmody
                                                ELLEN S. CARMODY
                                                United States Magistrate Judge